**George WILLIS, Plaintiff–Appellant,**

**v.**

**Christopher P. ARTUZ; Daniel Connelly, Lieutenant; Michael Haubert, Lieutenant; Burrette, Co; Gerbacz, Co, Defendants–Appellees.**

**Docket No. 00–0176.**

United States Court of Appeals, Second Circuit.

Argued: May 21, 2002.

Decided: Aug. 26, 2002.

Robert N. Isseks, Middletown, N.Y. (Alex Smith, on the brief), for Appellant.

Michael J. Keane, Assistant Attorney General of the State of New York, New York, N.Y. (Eliot Spitzer, Attorney General, and Mark Gimpel, Deputy Solicitor General, on the brief), for Appellees.

Before: WALKER, Chief Judge, JACOBS and LEVAL, Circuit Judges.

JACOBS, Circuit Judge.

This appeal is taken from a judgment, entered in the United States District Court for the Southern District of New York (Yanthis, *M.J.*), dismissing as a matter of law an inmate's § 1983 claim that prison officials violated his Fourth Amendment rights by conducting a warrantless search of his prison cell. The search was conducted at the behest of the police, who were seeking evidence of an uncharged crime, and did not serve any purpose related to prison security. George Willis, who is serving a life sentence, contends that the search violated his Fourth Amendment right against unreasonable search and seizure. Willis relies on our opinion in *United States v. Cohen*, 796 F.2d 20 (2d Cir. 1986), and in particular the passage in *Cohen* that says: "We take seriously the [Supreme] Court's statement that no iron curtain separates prisoners from the Constitution, and that the loss of [constitutional] rights is occasioned only by the *legitimate* needs of institutional security." *Id.* at 23 (emphasis in original). On appeal, we must decide whether Willis had a reasonable expectation of privacy in his prison cell entitling him to protection against the search. We conclude that a convict has no expectation of privacy in his prison cell. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). We therefore affirm.

**I**

George Willis was convicted in 1979 for First Degree Murder and Second Degree Manslaughter, and is serving a life sentence. At the time of the search in ques-

tion, Willis was a prisoner and defendants-appellees ("Defendants") were officials at the Green Haven Correctional Facility in Stormville, New York. On December 3, 1996, two detectives from the cold-case squad of the New York City Police Department interrogated Willis concerning an unsolved homicide committed prior to Willis's incarceration. The detectives asked prison officials to search Willis's prison cell for all written materials. While Willis was elsewhere being interrogated by the detectives, prison officials searched the cell and confiscated all written materials. Over the following week, prison officials looked through the papers for anything that might connect Willis to the cold murder case, but found nothing. They so advised the detectives, and returned Willis's papers.[1]

It is undisputed that the search was conducted to assist the detectives in their investigation, and was conducted without a warrant.

On July 24, 1997, Willis filed a complaint in the district court alleging a host of constitutional violations. The case proceeded to trial in January 2000, after which the court upheld a jury award of $1 in damages and $400 in punitive damages on the claim that prison officials retaliated against Willis for the exercise of his Fifth Amendment right to remain silent by refusing to confess during the December 3 interrogation. Defendants do not appeal from that ruling.

This appeal concerns Willis's Fourth Amendment claim, which was dismissed at the close of evidence under Rule 50, on the ground that under *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), a convicted prisoner enjoys no

---

1. It is unclear whether prison officials made copies of Willis's papers and, if so, whether they gave copies to the detectives.

Fourth Amendment protection in his prison cell. Willis appeals.

## II

■ We must decide whether a convict has a reasonable expectation of privacy in his prison cell entitling him to protection against searches instigated by prosecutors or the police for reasons unrelated to prison security. In so doing, we apply *Hudson*, which holds that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," 468 U.S. at 526, 104 S.Ct. 3194, and we distinguish our post-*Hudson* decision in *Cohen*, which says that the loss of a prisoner's constitutional right against unreasonable searches "is occasioned only by the *legitimate* needs of institutional security," 796 F.2d at 23 (emphasis in original).

In *Hudson*, a convict brought a § 1983 action challenging a "shakedown" search of his prison cell; the convict alleged that the search was conducted solely to harass him and not for any reason related to institutional security. 468 U.S. at 520, 104 S.Ct. 3194. The Supreme Court framed the issue broadly:

> We granted certiorari ... to decide whether a prison inmate has a reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures.

*Id.* at 519, 104 S.Ct. 3194.

The Fourth Circuit had held that an inmate retains a " 'limited privacy right' in his cell entitling him to protection against searches conducted solely to harass or to humiliate," and that shakedowns are permissible "only if 'done pursuant to an established program of conducting random searches of single cells or groups of cells reasonably designed to deter or discover the possession of contraband' or upon rea-

sonable belief that the particular prisoner possessed contraband." *Id.* at 521–22, 104 S.Ct. 3194 (quoting *Palmer v. Hudson*, 697 F.2d 1220, 1224–25 (4th Cir.1983)).

The Supreme Court held:

> Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Id.* at 525–26, 104 S.Ct. 3194.

The Court specifically considered Hudson's argument that, "because searches and seizures to harass are unreasonable, a prisoner has a reasonable expectation of privacy not to have his cell ... invaded for such a purpose," *id.* at 529, 104 S.Ct. 3194 (internal quotation marks omitted), and ruled:

> This argument, which assumes the answer to the predicate question whether a prisoner has a legitimate expectation of privacy in his prison cell at all, is merely a challenge to the reasonableness of the particular search of respondent's cell. Because we conclude that prisoners have no legitimate expectation of privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells, we need not address this issue.

*Id.* at 529–30, 104 S.Ct. 3194; *see also id.* at 538, 104 S.Ct. 3194 (O'Connor, J., concurring) ("The fact of arrest and incarcer-

68

ation abates all legitimate Fourth Amendment privacy ... interests ..., and therefore all searches and seizures of the contents of an inmate's cell are reasonable.").

Willis relies on *Cohen*, which was decided after *Hudson*. In *Cohen*, the appellant was not a convicted prisoner, but was rather a pre-trial detainee. He had challenged the admissibility of evidence seized during a warrantless search of his cell. The search was conducted at the behest of an assistant U.S. Attorney in charge of prosecuting him. We framed the issue as follows: "We are left then with deciding whether ... *a pre-trial detainee* retains no Fourth Amendment rights, regardless of the circumstances underlying the search." *Id.* at 23 (emphasis added). We held that a pre-trial detainee does retain Fourth Amendment protection against searches "at the instigation of non-prison officials for non-institutional security related reasons." *Id.* at 24. "The Supreme Court in *Hudson* did not contemplate a cell search intended solely to bolster the prosecution's case against a pre-trial detainee awaiting his day in court...." *Id.* at 23.

■ Willis cites language in *Cohen* that accounts for the *Hudson* holding in terms of the legitimate needs of prison security, and can be read out of context to say that *Hudson* applies only if the search serves the legitimate security interests of the prison authorities:

> The door on prisoner's rights against unreasonable searches has not been slammed shut and locked. We take seriously the Court's statement that no iron curtain separates prisoners from the Constitution, and that the loss of such

rights is occasioned only by the *legitimate* needs of institutional security.

*Id.* at 23 (emphasis in original). From this, Willis argues that he retains a limited privacy right against searches conducted solely to serve the interests of prosecutors or the police, and that serve no legitimate security interest of the prison authorities. We decline to extend to convicted prisoners the privacy right secured to pre-trial detainees in *Cohen.*[2]

In assessing whether the convict in *Hudson* was entitled to Fourth Amendment protection, the Court made clear that security is not the sole relevant institutional interest of the prison system:

> The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, chief among which is internal security. Of course, these restrictions or retractions also serve, incidentally, as reminders that, under our system of justice, deterrence and retribution are factors in addition to correction.

*Hudson*, 468 U.S. at 524, 104 S.Ct. 3194 (internal citations and quotation marks omitted). For that reason, the Court held that the Fourth Amendment protection of a convict against warrantless searches of his cell "simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions," notwithstanding the allegation in *Hudson* that the search at issue served no institutional security-related purpose but was conducted solely for harassment. *Id.* at 526, 104 S.Ct. 3194.

**2.** In *United States v. Malik*, 16 F.3d 45, 51 (2d Cir.1994), we expressed serious doubt as to whether a convict had any Fourth Amendment protection under facts substantially similar to those here. However, we did not decide

the question because we held that the admission of the evidence obtained pursuant to the challenged search was not unfairly prejudicial.

Unlike the pre-trial detainee in *Cohen*, a convicted prisoner's loss of privacy rights can be justified on grounds other than institutional security. *Cf. Benjamin v. Fraser*, 264 F.3d 175, 187 n. 10 (2d Cir. 2001) (certain penological interests—such as punishment and rehabilitation—do not apply to pre-trial detention). One of the incidents of confinement for a convict is the loss of privacy, which serves the legitimate purpose of retribution as well as the institutional security needs of the prison system. We therefore hold that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a [convict] might have in his prison cell." *Hudson*, 468 U.S. at 526, 104 S.Ct. 3194.

The judgment is affirmed.