Jeff SMITH, Plaintiff–Appellant,

v.

Justin A. TAYLOR, Deputy Superinten-
dent; Nitchke, Correctional Sergeant;
J. Campany, Correctional Officer; J.
Bragaw, Lieutenant; Howard, Hill,
Kwiant Sherman, Correctional Offi-
cers; G. Dietterich; Recreation Su-
pervisor, Cape Vincent Correctional
Facility; S. Monette, Correctional Of-
ficer at Cape Vincent Correctional
Facility; Cape Vincent Correctional
Facility, Defendants–Appellees.

Docket No. 03–0202.

United States Court of Appeals,
Second Circuit.

Aug. 23, 2005.

Jeff Smith, Rome, NY, for Appellant,
pro se.

Eliot Spitzer, Attorney General of the
State of New York, Albany, NY, (Andrea
Oser, Assistant Solicitor General; Marlene
O. Tuczinski, Assistant Solicitor General),
for Appellees, of counsel.

Present: POOLER, SOTOMAYOR,
Circuit Judges, and KORMAN, District
Judge.*

* The Honorable Edward R. Korman, Chief
Judge of the United States District Court for
the Eastern District of New York.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED** in part and **REMANDED** in part.

Jeff Smith appeals a judgment of the district court dismissing, pursuant to Federal Rule of Civil Procedure 56, his civil rights complaint against various correctional officials at the Cape Vincent Correctional Facility (the "facility") and the facility. We assume the parties' familiarity with the facts, procedural history, and specification of appellate issues and hold as follows.

■ (1) The district court correctly dismissed Smith's claims of defects in an administrative hearing that resulted in Smith's disciplinary confinement in the Special Housing Unit ("SHU") for forty-five days.[1] Smith failed to offer evidence that his forty-five-day confinement involved conditions more onerous than those generally present in the SHU. Therefore, he did not have a protected liberty interest in avoiding the confinement, and the district court properly dismissed his claim. *See Sealey v. Giltner,* 197 F.3d 578, 587, 589–90 (2d Cir.1999) (holding that plaintiff's SHU confinement of 101 days did not trigger due process protections even though plaintiff alleged that he was confined to his cell for twenty-three hours a day, limited to three showers a week, lost various privileges, and had feces thrown at him by other inmates on a few occasions);

*Colon v. Howard,* 215 F.3d 227, 232 n. 5 (2d Cir.2000) ("We do not exclude the possibility that SHU confinement of less than 101 days could be shown on a record more fully developed than the one in *Sealey* to constitute an atypical and severe hardship under *Sandin.*")

(2) Because convicted prisoners have no privacy rights in their cells, *Willis v. Artuz,* 301 F.3d 65, 69 (2d Cir.2002), the district court correctly found no Fourth Amendment violation based on the search of Smith's cell cube.

(3) Smith also claims that his liberty interests were violated when he was falsely accused of misconduct. Because we have already determined that no liberty interest was implicated in Smith's forty-five-day confinement, we hold that the allegations of false accusations are not actionable.

(4) In *Covino v. Patrissi,* we recognized that prisoners retain a limited right to bodily privacy, 967 F.2d 73, 78 (2d Cir. 1992), but upheld a prison regulation authorizing random body cavity searches as "reasonably related to [the prison's] legitimate penological interests," *id.* at 79. The decision was premised on evidence that (1) such searches had uncovered drugs and other contraband inserted into prisoners' rectums; (2) the inmate population included many who had violence and/or drug or alcohol abuse in their backgrounds; and (3) there was no less intrusive manner in which prison officials could serve the purpose of deterring the introduction of contraband. *Id.* With respect to the last fac-

---

1. Smith claims that he served ninety days in the SHU. However, the hearing officer's disposition was clearly for ninety days keeplock, with forty-five days suspended, and Smith identifies no evidence that he actually spent more time in keeplock or in the SHU. Although his amended complaint alleges that he was sentenced to ninety days, we find no record that Smith ever denied that forty-five days of that period were suspended as the hearing officer's disposition demonstrates. Although defendants urge that Smith's sentence was to keeplock and not to the SHU, he apparently served his keeplock sentence in the SHU. We have therefore assumed for the purposes of this order that Smith did serve his forty-five day sentence in the SHU.

tor, we emphasized that "such searches are conducted in the inmate's room with the door closed and that the only persons present are two prison officers and the inmate being searched." *Id.*

In contrast, Smith alleged that four officers—defendants Campany, Howard, Nitchke, and Hill, witnessed his strip search. He also alleged that one officer held Smith against the wall while another rested his hands on Smith's neck. It is unclear from the record before us whether these steps went beyond what was "reasonably related to [the prison's] legitimate penological interests." The presence of officers beyond the two authorized by the applicable Corrections Department Directive suggests that there may have been a privacy violation that was not necessary to serve penological interests. *See* State of New York Department of Correctional Services Directive No. 4910 (Feb.1994) § III(G)(1) ("[o]nly a correction officer who is conducting the frisk, and, if necessary, a supervisor of the rank of sergeant or higher may be present and able to see the inmate during a strip search or strip frisk").

■ *Covino* does not clearly establish that the strip search here was or was not reasonably related to the prison's legitimate penological goals. The magistrate judge's report and recommendation, which the district judge, adopted in its entirety said:

> Because plaintiff's visual body cavity search was conducted pursuant to a valid DOCS policy requiring such searches for prisoners entering an SHU, and there is no indication that it was conducted in an unreasonable manner unrelated to a legitimate penological concern, I recommend the entry of summary judgment in favor of defendants on this claim.

From this analysis, we do not know whether the district court overlooked Smith's claim that the search here went beyond the prison directive or determined that the presence of additional officers and the physical force alleged, even if proven, did not make the search unreasonable in light of the institution's legitimate penological objectives. In either event, we would benefit from a more detailed statement of the district court's reasoning. We therefore remand the case to the district court for further consideration of this issue. *See Beckford v. Portuondo*, 234 F.3d 128, 130 (2d Cir.2000) ("We are dependent on the district court to identify and sort out the issues ..., to examine and analyze them, and to apply the law to the facts accepted by the court for purposes of the motion. We are entitled to the benefit of the district court's judgment, which is always helpful and usually persuasive."). On this issue, jurisdiction will be returned to this Court without a new notice of appeal when any of the parties furnishes to the clerk of this Court a copy of the district court's ruling on remand. The case will be referred to this panel.

(5) We have considered Smith's remaining arguments and find no merit in them.

In sum, we affirm the district court's judgment with the exception of its dismissal of the strip-search claim against defendants Howard, Hill, Campany, and Nitchke, which we remand for further analysis and decision in accordance with this opinion.