

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00206-CR

RAUL VILLEGAS GARZA                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

## FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
## TRIAL COURT NO. CR12706

----------

## MEMORANDUM OPINION[1]

----------

Appellant Raul Villegas Garza appeals his conviction of and sentence for tampering with or fabricating evidence. *See* Tex. Penal Code § 37.09(a)(2) (West Supp. 2014). We modify the judgment and affirm it as modified.

---

[1]*See* Tex. R. App. P. 47.4.

**Background Facts**

In 2004, Appellant was convicted on four counts of indecency with a child and sentenced to twenty years' confinement for each count, to run concurrently. During his incarceration, Appellant filed six applications for postconviction habeas relief. Appellant's sixth application was filed on February 12, 2013.

When the Hood County District Attorney, Robert Christian, received a copy of the sixth application, he noted that the application contained two affidavits that had not been included in Appellant's previous applications. One, entitled "Affidavit to Recant My False Testimony," was purportedly written by Appellant's ex-wife, Priscilla Sides, formerly known as Priscilla Kindle. The affidavit used the spelling "Priscilla Kendal" and was signed by "Priscilla Kendall." The affidavit stated that Sides had lied on the witness stand during Appellant's trial. The other affidavit was purportedly written by Dr. H. Pat Hezmall and stated that Appellant "has no capacity for sexual arousal."

On March 4, 2013, Robert Young, an investigator for the district attorney of Hood County, interviewed Appellant in prison. Young recorded the interview with both a video camera and an audiotape recorder. He gave Appellant a *Miranda* warning and asked if he would be willing to answer questions. Appellant agreed to talk. While Young was interviewing Appellant, prison guards removed all of Appellant's files and documents from his cell. The guards brought the documents to the interview room, and Young got Appellant's permission to go through them and discuss them.

Young interviewed Appellant for about an hour and a half, at which time Appellant asked Young to turn off the video recorder. Unaware that he was still being recorded by audiotape, Appellant confessed to making the false affidavits with the help of some other inmates.

Appellant took a break for dinner, and when he returned, Young asked him to complete a written statement regarding his confession. He also asked Appellant to sign a consent form to allow him to take the documents from the prison. At the top of the statement form, Appellant initialed that he understood his rights. The consent form also had his rights listed at the top of the page. Young took all of Appellant's documents except for a copy of a court reporter's record.

Appellant was charged with aggravated perjury and tampering with or fabricating evidence. *See id.* Before trial, Appellant filed a motion to suppress the tangible evidence removed from his prison cell and all statements he made to law enforcement officers. After a hearing, the trial court denied the motion.

Also prior to trial, Appellant filed a motion to disqualify or recuse Judge Ralph Walton, Jr. from presiding over the case. Judge Walton had represented Appellant against charges of sexual abuse of a child that were unrelated to his 2004 conviction, and Appellant claimed that he intended to call Judge Walton as a witness. Judge Jeff Walker, then presiding for the 8th Administrative Judicial Region, denied this motion after a hearing.

At trial, Priscilla testified that on the date the affidavit was signed, her last name was Sides, not Kindle, that she had never spelled Kindle as "Kendal" or "Kendall," and that she did not sign the affidavit purporting to be from her. The notaries whose stamps were on the questioned affidavits both testified that they did not notarize the affidavits.

A man named John Pizer testified that he had been assisting Appellant with his applications. He testified that he had sent Hezmall the affidavit for him to sign, but that Hezmall had never responded. Pizer stated that he eventually received the signed copy of the Hezmall affidavit and Kendall affidavit in envelopes with no return address. He did not know who mailed them to him. Pizer then filed Appellant's writ for him, using the affidavits as exhibits and signing Appellant's name.

A jury found Appellant not guilty of aggravated perjury, but guilty of tampering with or fabricating evidence, and assessed a punishment of twenty years' confinement. The trial court sentenced Appellant accordingly. Appellant then filed this appeal.

**Discussion**

**1. Motion to suppress**

In his first point, Appellant argues that the trial court erred by denying his motion to suppress the evidence removed from his prison cell and the statements he made in his interview with Young. At the hearing on the motion, and again at trial, Appellant argued that he did not consent to the search of his prison cell and

4

that he was coerced into giving a false confession so that he would be allowed to keep a copy of his trial transcript.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The State argues that Appellant did not have standing to challenge the search of his prison cell. A person has standing to contend that a search or seizure was unreasonable if (1) he has a subjective expectation of privacy in the place or object searched and (2) society is prepared to recognize that expectation as "reasonable" or "legitimate." *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014) (citing *Minnesota v. Olson*, 495 U.S. 91, 95–97, 110 S. Ct. 1684, 1687–88 (1990); *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004)). The United States Supreme Court has held, "[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within

5

the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S. Ct. 3194, 3200 (1984). Although Appellant relies heavily on *Granville* for his standing argument, nothing in that opinion undermines the clear statement in *Hudson*. *See Granville*, 423 S.W.3d at 414 & n.56 (distinguishing *Hudson*). The cases Appellant cites from other jurisdictions are also irrelevant to our analysis. *See United States v. Cohen*, 796 F.2d 20, 24 (2d Cir. 1986) (holding that pre-trial detainee had an expectation of privacy within his cell sufficient to challenge an investigatory search ordered by a prosecutor); *Lowe v. State*, 203 Ga. App. 277, 278–79, 416 S.E.2d 750, 752 (1992) (same). Both *Cohen* and *Lowe* involve pre-trial detainees, not convicted prisoners as is the case here. *See Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002) (distinguishing *Cohen* on ground that appellant was a convicted prisoner); *Lutz v. Collins*, No. 04-08-00496-CV, 2009 WL 330958, at *4 (Tex. App.—San Antonio Feb. 11, 2009, pet. denied) (mem. op.) (same). We overrule Appellant's first point as to the search of his prison cell and seizure of the tangible evidence.

As to Appellant's argument that his confession was the result of coercion or duress, we must give deference to the trial court's evaluation of the facts. *See Amador*, 221 S.W.3d at 673. Appellant testified that he confessed because he had been worn out from the interview. He said,

> I'd been there, and I tried to tell him the truth, several times I told him that I didn't do it, that that was not my signature, and he wouldn't believe me, and he just finally wore me down to where I was going to tell him what he wanted to hear.

6

Appellant claimed that he gave his oral confession so that he could keep his trial transcript.   Yet, the entire conversation was audiotaped and having reviewed that tape, we find no promise or coercion by Young prior to Appellant's confession.   Appellant later testified that Young promised that Appellant could keep his trial transcript if he provided a written statement.   Appellant claimed the promise was made after Young had turned off the recording devices.   Young denied that he promised Appellant anything in exchange for his confession.   He testified that he left the transcript at Appellant's request and because it was not relevant to his investigation of the doctored applications.

The trial court issued findings that "beyond a reasonable doubt, without regard to the truth or falsity of said audio taped and videotaped oral statement, that the same was freely and voluntarily made and is, as a matter of law and fact, admissible as evidence before the jury in this case."   The trial judge believed that Appellant had not been coerced and he was free to make that determination. *See Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994) ("The trial judge is sole judge of credibility of witnesses in a pretrial hearing and, absent a showing of abuse of discretion, a trial court's finding on the voluntariness of a confession will not be disturbed.").   Nothing in these facts shows that the trial court abused its discretion in denying the motion to suppress the confession.   We overrule the remainder of Appellant's first point.

7

## 2. Sufficiency of the evidence

In his second point, Appellant argues that the evidence is legally insufficient to support his conviction. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences

8

in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

A person commits the offense of tampering with or fabricating physical evidence if, knowing that an investigation or official proceeding is pending or in progress, he makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent to affect the course or outcome of the investigation or official proceeding. Tex. Penal Code Ann. § 37.09(a)(2). Appellant notes that the jury charge defined the offense as "intentionally or knowingly mak[ing], present[ing,] *and* us[ing] documents . . . with knowledge of their falsity and with the intent to affect the course or outcome of the official proceeding." [Emphasis added.] He argues that there is no evidence that he made, presented, *and* used false documents. However, we measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law.").

Appellant claims, "John Pizer alone was the party responsible for producing, signing[,] and filing" the application containing the false affidavits. Pizer testified that he did not doctor the two affidavits. He wrote the affidavit for Hezmall, but Hezmall never returned his letters or phone calls. A copy of the

9

letter Pizer sent to Hezmall was submitted into evidence. It was dated February 17, 2011. Appellant stated in his interview that Pizer sent him copies of the drafted affidavit when he mailed it to Hezmall. Sides testified that she did not recall ever receiving a letter asking her to sign an affidavit regarding Appellant.

Pizer said that he received the Hezmall and Kendall affidavits "out of the blue" and that he did not know who mailed them. After Appellant accused him of falsifying the affidavits, Pizer wrote Appellant a letter stating,

> The affidavit from Priscilla came to me in the mail. I no longer remember where they came from[,] and if they came direct from Priscilla[,] I don't know where she got my address, but there are several possibilities. I may have written her a very long time ago, but she did not respond[,] and so I never have had any correspondence with her.

Appellant testified that he first became aware that Pizer had signed Appellant's name on the sixth application when Young came to interview him on March 4, 2013. But Appellant twice stated that on February 28, 2013, he received a copy of what Pizer had filed on his behalf. He then said he must have received it "maybe three or four days" after it was mailed. A letter from Appellant to the district court clerk, dated February 21, 2013, states that Appellant mailed the application on February 8, 2013. At trial, he explained that he said in the letter to the district clerk that he had filed the application because "everything Pizer's done, it's always had my name on the return address. And since the writ is under my name, I couldn't very well say that—Pizer's writ, so I put I mailed it off to you, so they'd be looking for my name."

10

The notary whose name appears on the Kendall affidavit testified that she had notarized a document for Vern Mason. Mason is Appellant's brother-in-law. The notary whose name appears on the Hezmall affidavit testified that she had notarized a document for Rachel Guerra. Guerra is Appellant's sister and Mason's wife. Appellant claims that the notary stamps were not in his prison files. Young, however, testified that he found multiple copies of the Mason affidavit (used to make the Kendall affidavit) and a copy of the Guerra affidavit (used to make the Hezmall affidavit) in the documents removed from Appellant's cell. Notes discussing "newly discovered evidence" from Appellant's cell reference an affidavit from "Priscilla Kendall recanting her testimony" and Hezmall. The fourth application, signed by Appellant, includes an altered letter from his trial attorney. The altered letter removed the trial attorney's statements:

> I subpoened your treating physician, and he testified from the records. . . .

> You are forgetting that at the time of the trial your sister Rachel was against us. I read her affidavit, with interest. Often, family members will be remorseful about testifying against their own kin and change their stories after trial.

Appellant filed that writ application before he had contacted Pizer.

In his taped interview, Appellant stated that he had a friend make the affidavits "because everything [he had] tried to do legally [was] cut down through the district court." He said, "I was hoping that I would get a hearing where I could bring in the other evidence that I have that wasn't used in court to prove my innocence." He said that the Kendall affidavit was made by an inmate who has

11

since been released. He told the inmate what to put in the affidavit, and the inmate "chopped up" the documents to affix the notary stamp to it.

Appellant told Young that he sent the fake affidavits to Pizer without telling Pizer that they were false and that Pizer filed them. He said he understood what he did was wrong and illegal. He went on, "I didn't think y'all were gonna be smart enough to look at the affidavit, I mean the notary." In his written confession, Appellant said, "I [am] sorry for making these false documents. . . . Please understand my reason, I knew it would come back and get me. . . . I know I was in the wrong for this act but[] all I was trying to get was a hearing."

The jury was free to disbelieve Appellant's statement that he received the affidavits anonymously and his statement that he received them from Pizer, who had received them anonymously. The jury was also free to disbelieve that Appellant did not intend for Pizer to file the writ or that Appellant was coerced into confessing. The jury could have believed instead that Appellant, with the aid of other inmates, fabricated the affidavits using old notary stamps found in Appellant's files and sent them to Pizer with the intent that Pizer file them with Appellant's writ application. *See Waldrop v. State*, 219 S.W.3d 531, 534 (Tex. App.—Texarkana 2007, no pet.) ("[T]he plain language of Section 37.09 does not require that the actor present the evidence in question directly to the investigating agency."). Viewing all of the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant made, presented, or used the affidavits with knowledge of their

falsity and with the intent to affect the course or outcome of the official proceeding. *See* Tex. Penal Code Ann. § 37.09(a)(2); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. We overrule Appellant's second point.

## 3. Disqualification and recusal

In his third point, Appellant argues that Judge Walton should have been disqualified or recused from presiding over the trial. Judge Walton had previously been counsel for Appellant in 1998 on an unrelated charge of sexual abuse of a child. He also presided over the underlying indecency with a child case. In his pretrial motion to disqualify or recuse Judge Walton, Appellant stated that he intended to call Judge Walton as a witness. At the hearing on the motion before Judge Jeff Walker,[2] Appellant explained that as the judge in the underlying case, Judge Walton was required to review all of Appellant's applications. Appellant argued that Judge Walton necessarily must have looked at the forged affidavits and had not noticed anything wrong with them. The following exchange then took place:

> THE COURT: That's evidence of nothing, quite frankly. I assume the State's going to bring in experts to either testify as to handwriting or they're going to bring in the supposed affiants who are going to testify, we didn't sign these.
>
> [APPELLANT'S COUNSEL]: I suppose, Your Honor.

[2]When a recusal motion is timely filed, rule of civil procedure 18a requires a trial judge to either recuse himself or refer the motion to the regional presiding judge to decide. *De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004); *see* Tex. R. Civ. P. 18a; *see also Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (holding that rule 18a applies in criminal cases).

THE COURT: Neither one of those involves the judge.

At the end of the hearing, Judge Walker said,

All right. Mr. Garza, I'm going to deny your motion for the simple reason that what you have wanted the judge to testify to probably is not admissible at the time of the hearing, and whether or not the judge thought the signatures looked funny or different or saw any problem with them, it's not an issue. The issue is, were they forged? And the judge can hear that and render a judgment based upon the evidence that he receives at that time.

Appellant first argues that Judge Walton was statutorily disqualified under the code of criminal procedure. Article 30.01 states,

No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree, as determined under Chapter 573, Government Code.

Tex. Code Crim. Proc. art. 30.01 (West 2006).

The portion of the statute that disqualifies a judge when "he has been counsel for . . . the accused" requires "an affirmative showing that the judge actually acted as counsel in the very case before him." *Gamez v. State*, 737 S.W.2d 315, 319 (Tex. Crim. App. 1987). The only evidence in the record is that Judge Walton had previously been Appellant's counsel in an unrelated matter. Such previous representation did not disqualify him from presiding over the present case. *See Kuykendall v. State*, 335 S.W.3d 429, 432 (Tex. App.—Beaumont 2011, pet. ref'd) ("A judge is not disqualified simply because he has

14

prosecuted or defended the accused in past cases." (citing *Hathorne v. State*, 459 S.W.2d 826, 829 (Tex. Crim. App. 1970))).

Appellant also appears to argue that Judge Walton was his victim of the charged offense. The court of criminal appeals interpreted the phrase "may be the party injured" to mean that a judge is disqualified "if the evidence shows that he was among the defendant's victims in the criminal transaction or episode at issue, such that a reasonable person would harbor doubts as to the judge's impartiality." *Whitehead v. State*, 273 S.W.3d 285, 289 (Tex. Crim. App. 2008). Appellant's argument is presumably based on the belief that Judge Walton was a victim because as the presiding judge over the underlying indecency case and associated postconviction proceedings, he read the false affidavits and was perhaps tricked into believing in their authenticity. Yet there is no evidence that Judge Walton believed the affidavits to be true or that reading them caused him any injury.[3] *See Lane v. State*, 634 S.W.2d 65, 66 (Tex. App.—Fort Worth 1982, no pet.) ("When perjury is committed in a judicial proceeding, it is the administration of justice that suffers the offense, not the person or property of the trial judge."). Judge Walton was not Appellant's victim in any sense that would disqualify him from presiding over the perjury trial. *See id.* (holding that the trial judge in front of whom perjury was committed was not disqualified from hearing the subsequent perjury trial).

---

[3]Judge Walton denied Appellant's writ application prior to the hearing on Appellant's motion to recuse or disqualify him.

15

Appellant also argues that Judge Walton should have been recused under rule 18b(b)(1) of the rules of civil procedure. *See* Tex. R. Civ. P. 18b(b)(1). We review the denial of a motion to recuse under an abuse of discretion standard. Tex. R. Civ. P. 18a(j)(1)(A). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620. Nor does a mere error in judgment rise to an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

We apply a reasonable person standard in determining whether a recusal motion should have been granted. *Duffey v. State*, 428 S.W.3d 319, 325 (Tex. App.—Texarkana 2014, no pet.) (citing *Woodruff v. Wright*, 51 S.W.3d 727, 736 (Tex. App.—Texarkana 2001, pet. denied)). The question is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial. *Id.* (citing *Rogers v. Bradley*, 909 S.W.2d 872, 881 (Tex. 1995)). Accordingly, the need for recusal is triggered only when a judge displays an "attitude or state of mind so resistant to fair and dispassionate

16

inquiry" as to cause a reasonable member of the public to question the objective nature of the judge's rulings. *Ex parte Ellis*, 275 S.W.3d 109, 117 (Tex. App.—Austin 2008, no pet.) (quoting *Liteky v. U.S.*, 510 U.S. 540, 557–58, 114 S. Ct. 1147, 1158 (1994) (Kennedy, J., concurring)).

Courts enjoy a "presumption of judicial impartiality" that "is not defeated by the mere assertion of bias based on a trial judge's previous judicial relationship with a defendant." *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd) (citing *Durrough v. State*, 620 S.W.2d 134, 143 (Tex. Crim. App. 1981)). The movant bears the burden of proving that recusal is warranted, and it is a high one. *Id.* That burden is only satisfied when the movant provides facts demonstrating the presence of bias or partiality "of such a nature and extent as to deny the movant due process of law." *Ellis*, 275 S.W.3d at 117.

As recited above, Judge Walker explained that he denied Appellant's motion for recusal because he did not believe that Judge Walton's history with Appellant would bear on any of the issues to be determined in the perjury trial. Again, a previous judicial relationship with a defendant does not defeat the presumption of judicial impartiality unless there is a reason to believe that the judge has closed his mind to fair and dispassionate inquiry. *Ellis*, 275 S.W.3d at 117; *Abdygapparova*, 243 S.W.3d at 198–99. Judge Walker's ruling that Appellant had not met his burden of demonstrating Judge Walton's impartiality

was not outside the zone of reasonable disagreement and was therefore not an abuse of discretion. We overrule Appellant's third point.

## 4. Attorney's fees and costs

In his fourth point, Appellant argues that the trial court erred by ordering him to pay attorney's fees and costs. The trial court ordered that Appellant pay $11,316.27 in court costs, $10,880.27 of which was for attorney's fees.

The State agrees that the trial court erred in assessing the attorney's fees against Appellant because he was indigent. *See Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010) ("[A] defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees."). A trial court can order a defendant to pay in part or in whole the costs of the legal services provided to him if the court determines that the defendant has the financial resources that enable him to pay. Tex. Code Crim. Proc. art. 26.05(g) (West Supp. 2014). However, "[a] defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." *Id.* art. 26.04(p) (West Supp. 2014). Appellant was incarcerated throughout the trial, was represented by court-appointed counsel at trial and on appeal, and there was no evidence of any material change in his financial circumstances. We therefore agree that trial court erred by assessing attorney's fees as costs against Appellant, and we sustain that portion of Appellant's fourth point.

18

*See Vogt v. State*, 421 S.W.3d 233, 246 (Tex. App.—San Antonio 2013, pet. ref'd) (holding that trial court erred by assessing attorney's fees against defendant when record showed that court-appointed counsel represented defendant at trial and on appeal).

The State disagrees, however, that the remaining $436 in court costs were erroneously assessed against Appellant. A trial court can order an indigent defendant to pay court costs provided payment is not demanded before the trial court proceedings have concluded. *Allen v. State*, 426 S.W.3d 253, 259 (Tex. App.—Texarkana 2013, no pet.); *see also Williams v. State*, 332 S.W.3d 694, 700 (Tex. App.—Amarillo 2011, pet. denied) (holding that legislatively mandated court costs are "properly collectable by means of a withdrawal notification regardless of a defendant's ability to pay"). Appellant does not argue that any of the fees assessed against him are not legislatively mandated.[4] Thus, we overrule Appellant's fourth point to the extent that it challenges the court costs other than the attorney's fees.

---

[4] The Bill of Costs lists the following fees assessed against Appellant: Capias Warrant Fee, Clerk's Fee, Consolidated Court Costs Fee, Courthouse Security Fee, Criminal E-Filing Conviction Fee, Criminal Technology Fee, Indigent Defense Services Fee, Judicial Support Fee, Jury Reimbursement Fee, Jury Trial Fee, Records Management and Preservation Fee, Restitution Fee, Summoning Witness Fee, and Time Payment Fee. *See* Office of Court Admin., *District Clerk's Felony Court Cost Chart* (Sept. 1, 2013), http://www.txcourts.gov/media/681164/dc-felctcst090113.pdf (listing fees that may be assessed and the statutes mandating them).

**Conclusion**

Having sustained the portion of Appellant's fourth point regarding the assessment of attorney's fees against him, we modify the judgment and bill of costs to delete the assessment of $10,880.27 in attorney's fees. Having overruled Appellant's first three points and the remainder of his fourth point, we affirm the trial court's judgment as modified.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, GARDNER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 28, 2015