**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No.  16-1239

—————————

UNITED STATES OF AMERICA

v.

NICHOLAS STANISHIA,
                                            Appellant

—————————

On Appeal from the District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-14-cr-00265-001)
District Judge: Honorable John E. Jones, III

—————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 1, 2016

Before: HARDIMAN, SCIRICA, Circuit Judges and ROSENTHAL*, District Judge

(Opinion Filed:  April 25, 2017)

—————————

OPINION**

—————————

* The Honorable Lee H. Rosenthal, United States District Judge for the Southern District of Texas, sitting by designation.
** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Nicholas Stanishia appeals the denial of his motion to suppress evidence obtained during a search of his prison cell and subsequent conviction for conspiracy to threaten a witness from a prior state criminal case. We will affirm.[1]

## I.

This case arises from events while Stanishia was serving a life sentence for murder at the Southeastern Correctional Institution in Lancaster, Ohio. In May 1997, Stanishia lured his ex-girlfriend, Leslie White, and her boyfriend, Christopher Bertz, to a bar and then followed them back to Bertz's apartment in Columbus, Ohio. Stanishia broke down the apartment door and shot Bertz and White, who died from her injuries. Bertz survived and called police, who were unable to apprehend Stanishia. In February 2000, while a fugitive in Wichita, Kansas, Stanishia broke into the home of a woman and raped her. Stanishia was apprehended soon thereafter.

In September 2001, an Ohio jury found Stanishia guilty of aggravated murder, attempted murder, and burglary based on the events of May 1997. Bertz was a key witness in the murder trial and identified Stanishia as White's killer. Stanishia was sentenced to life imprisonment plus ten years. In 2004, following Stanishia's identification through DNA evidence, a Kansas jury found him guilty of burglary, rape, and kidnapping for the events of February 2000, and he was sentenced to an additional 714 months imprisonment.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

While incarcerated in Ohio, Stanishia located Bertz, with the aid of other inmates and his former prison psychologist, with whom he had an illicit relationship. On August 1, 2014, a confederate of Stanishia's, Martin Jay Wilson, placed a gas can filled with water on Bertz's back porch. Several days later, on August 4, Stanishia called Bertz, and demanded Bertz sign an affidavit recanting his trial testimony and promise not to testify in Stanishia's then-pending state appeal. Stanishia asked if Bertz had seen the gas can at his home, and when Bertz confirmed he had, Stanishia told him the next time the gas can would not be filled with water.

Bertz contacted the local police, who requested assistance from the Federal Bureau of Investigation. FBI Agent Eric Rardain contacted Investigator Todd Cordial, an employee at Southeastern Correctional Institution. Rardain told Cordial about the threatening calls to Bertz from Stanishia and informed Cordial he suspected Stanishia had a cellphone in the prison. Rardain asked Cordial to "do what you guys do." J.A. at 46.

On August 12, Bertz received the affidavit in the mail at his office. Stanishia called Bertz again on August 21, 2014, and demanded he sign the affidavit. Stanishia claimed to be a member of the Aryan Brotherhood and threatened to kill Bertz and his family if Bertz did not comply.

Following the second call, Rardain contacted Cordial again. Cordial reviewed closed circuit television tapes at Southeastern Correctional Institution and, based on the time and length of the telephone conversation with Bertz, determined Stanishia was inside of a cleaning supply closet at the time of the phone call. Another inmate, Jody Six, stood watch outside of the closet.

3

On August 24, 2014, prison officials searched the closet and Stanishia's bunk, but were unable to locate the cell phone. During a search of Six's living area, prison officials recovered a laundry bag that contained personal papers belonging to Stanishia. Cordial seized the papers as contraband, based on institution rules which forbade an inmate from holding property for another. The papers contained letters and e-mails from Stanishia's confederates regarding Bertz, as well as a draft copy of the affidavit. On October 9, 2014, after obtaining a warrant, FBI agents searched the entire dorm and recovered two cell phones and additional evidence.

On October 15, 2014, a federal grand jury indicted Stanishia and four codefendants for conspiracy to commit interstate transmission of an extortionate threat and a threat to injure (18 U.S.C. § 371), extortionate threat to injure in interstate communications (18 U.S.C. § 875(b)), and threat to injure in interstate communications (18 U.S.C. § 875(c)). Stanishia filed a motion to suppress the evidence recovered during the August 24, 2014, prison search. Following a hearing, the trial judge denied the motion to suppress. A jury convicted Stanishia on all three charges of the indictment, and he was sentenced to 240 months imprisonment. Stanishia now appeals the denial of the motion to suppress and his conviction.

## II.

We review the denial of a motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the properly found facts. *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007). A convicted prisoner does not have a legitimate expectation of privacy in his cell and accordingly "the Fourth

Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.*

Stanishia relies on *United States v. Cohen*, in which the United States Court of Appeals for the Second Circuit recognized a limited Fourth Amendment right for a pretrial detainee whose prison cell was searched at the request of law enforcement. 796 F.2d 20, 23–24 (2d Cir. 1986). We need not decide today whether to consider the *Cohen* exception for pretrial detainees, because it is inapposite to this case. The Second Circuit has declined to extend the *Cohen* exception to convicted prisoners. *Willis v. Artuz*, 301 F.3d 65, 68 (2d Cir. 2002). Convicted prisoners, like Stanishia, have no Fourth Amendment right with respect to searches of their cells. *Hudson*, 468 U.S. at 526; *see Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) (concluding a convicted prisoner has no "right to maintain private spaces for possessions," in contrast to a convicted prisoner's limited Fourth Amendment privacy right with respect to bodily searches).

Stanishia argues the reasoning of *Cohen* should nonetheless apply to his case because the search of his cell was based on a tip from law enforcement and was not motivated by prison safety concerns. This argument fails for two reasons. First, the Fourth Amendment right of privacy does not extend to searches of prison cells of convicted prisoners, regardless of the reason for the search, because proper administration requires prison staff have unfettered access to prison facilities. *Hudson*,

5

468 U.S. at 527 ("[A]dministration of a prison . . . would be literally impossible . . . if inmates retained a right of privacy in their cells."); *see Willis*, 301 F.3d at 69 ("[A] convicted prisoner's loss of privacy rights can be justified on grounds other than institutional security."). Thus, the reason for the search is irrelevant to the analysis in this case. Second, the trial judge correctly concluded prison officials would have searched the area—regardless of an FBI request to investigate a possible crime—upon learning about a possible contraband cell phone because a cell phone in a prison poses serious institutional security risks. Accordingly, the District Court correctly held that the August 24, 2014, search did not violate the Fourth Amendment.

## III.

For the foregoing reasons and those provided in the District Court's opinion, we will affirm the denial of Stanishia's motion to suppress, and affirm the judgment of conviction and sentence.