# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CURTIS TRAYLOR-HARRIS,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, Curtis Traylor-Harris, appeals his conviction for theft of property by a public servant. In three issues, he challenges the corroboration of accomplice witness evidence, the denial of his motions to recuse, and the trial court's failure to grant a mistrial. We affirm.

### BACKGROUND

On January 26, 2021, Appellant, then newly elected as the constable for Smith County Precinct 1, traveled to the residence of Brittany Poster to execute a writ of possession in connection with an eviction. Appellant was accompanied by three deputies, Darryl King, Derrick Holman, and LaQuenda Banks. The officers entered the house with guns drawn, but Poster was not present at the home. However, Poster's teenage daughter Arianna was there with a friend. Video footage from Holman's body camera shows that after sending the girls outside with two pet dogs, the deputies looked around the house and found a large bag of marijuana in a closet. Upon this discovery, Holman stated, "We can take whatever we want now," and turned off his body camera. However, Banks mistakenly activated her own body camera at the same time, accidentally capturing the subsequent events.

In relevant part, Banks's body camera footage shows her standing in a closet (very close to Appellant) as Appellant hands her a watch box. He said, "Take that shit," and Banks removes

1

the watches from the box. She stands in front of a nearby mirror and places the items inside her uniform shirt, then says, "[I] put it in my shirt." Banks opens the drawers of a vanity and removes two makeup palettes, showing them to Appellant and stating, "This is the shit I bought last night," after which she also conceals these items inside her shirt. While Appellant is standing directly in front of her, Banks does the same with a pair of designer sunglasses from a nightstand upstairs. Additionally, the video shows Appellant counting out cash from a wallet located inside the house and commenting on the amount present.

Texas Ranger Chris Baggett began investigating this matter after the Smith County district attorney's office contacted him in October 2022, because they had video footage depicting an elected official (as well as deputy constables) stealing items while executing a writ of possession. Baggett reviewed the videos and separately interviewed Poster, Appellant, Banks, and Holman. Based upon his investigation, he obtained an arrest warrant for Appellant, Banks, and Holman, and thereafter arrested all three. Appellant was charged with theft of property by a public servant.

Motions to Recuse

Before trial, Appellant violated the conditions of his bond by leaving the county without permission and possessing a firearm. Judge Jack Skeen, Jr. of the Smith County District Court subsequently increased Appellant's bond from $10,000.00 to $500,000.00, and Appellant moved to have his bond amount reduced. At the hearing, Judge Skeen expressed his anger that "an officer sworn to uphold the law" would violate his bond conditions and stated that he would not "cut [Appellant] any slack." At the conclusion of the hearing, Judge Skeen refused to reduce the bond amount, and increased Appellant's bond for a related offense to $500,000.00. Appellant appealed from the bond he alleged was oppressive in both causes, and this Court ordered that the bond amount be reassessed.[1] Additionally, Appellant moved to recuse Judge Skeen, alleging that the high bond amount and the judge's statement that he would not cut Appellant any slack evidenced personal bias against Appellant. On September 23, 2022, Judge Alfonso Charles held a new hearing on the bond reduction, and reduced Appellant's bond for both causes to $20,000.00. Judge Charles then took up the motion to recuse and found that Judge Skeen's statement was likely meant to indicate that Appellant would be treated like any other person,

---

[1] *See* **Traylor-Harris v. State**, No. 12-22-00165-CR, 2022 WL 3908538, at *4-5 (Tex. App.—Tyler Aug. 30, 2022, no pet.) (mem. op., not designated for publication).

without regard to his status as a law enforcement officer. Therefore, Judge Charles denied the motion to recuse.

On November 11, Appellant again moved to recuse Judge Skeen, this time alleging that the judge was biased and impartial because he stated his intent to keep Appellant's case at the top of his trial docket, ahead of cases involving incarcerated defendants. Judge Skeen reasoned that Appellant's bond conditions prohibited him from carrying a firearm, so he would be in danger when trying to perform his duties as constable; therefore, completing trial (and thereby ending the bond conditions) as soon as possible would be beneficial to Appellant's safety. Judge Charles also heard this second motion to recuse, and denied the motion because Appellant's argument for recusal was based solely on Judge Skeen's rulings in the case, in which he exercised his judicial discretion to administer his trial docket. Trial commenced on December 5, 2022, with Judge Skeen presiding.

Trial Evidence

Poster testified that she arrived at her rented house while Appellant and the deputies were still present. She attempted to speak to her daughter and became upset when she was not permitted to do so, was arrested for resisting, and was subsequently released. The family moved into a new residence shortly thereafter. Once Poster had an opportunity to examine the family's belongings at their new residence, she noticed that items were missing, including cash, watches, sunglasses, and makeup. Poster reported the theft to the Tyler Police Department, but she felt the report was not taken seriously. After receiving unpleasant phone calls from the detective in charge of the investigation (which she testified included insults and disparagement to the validity of her claims), she requested that the department not contact her again, and the department suspended the investigation. Then, in October of 2022, she received a phone call from Ranger Baggett, asking her to come to his office and review a video from the day of the eviction, depicting Banks, Appellant, and Holman taking items from the house. Baggett returned some of the missing items to Poster, but others were never returned.

Banks testified that shortly before her body camera footage began, Appellant instructed her to "Take what you want," and gestured to imitate zipping and unzipping his own uniform shirt. She understood this as an instruction to steal items from the house (while she was meant to be searching for and confiscating contraband or dangerous items). Banks stated that she believed she would be fired if she did not participate but did not protest at the time. She concealed several

items from Poster's residence inside her loose uniform shirt, within Appellant's view, and testified that he saw her do so. When Banks picked up a box containing a watch, Appellant instructed her, "Take that shit," so she concealed the watch inside her shirt as well. Banks exited the residence twice to deposit the items inside her shirt into Holman's vehicle, because it was closer than her own. She did not personally see Appellant or Holman take any items from the house and did not know whether they took anything while she was outside. Banks testified that Deputy King did not know about or participate in the theft.

After the eviction was complete, Appellant, Banks, Holman, and King returned to the office of Precinct 1. Appellant, Banks, and Holman waited for King to leave, and then Banks brought the stolen items that were in Holman's vehicle inside. The three then divided up the items. Banks took pairs of sunglasses, an Apple watch, a black watch, and designer makeup. Banks testified that Appellant wanted to take a pair of Apple earphones, but the box was empty. However, Appellant did obtain "a couple of the watches" from the case shown in the body camera video. Several months later, Ranger Baggett contacted Banks to question her about Poster's missing items. She provided him with a false statement and did not admit to stealing the items. Thereafter, she spoke to Appellant, who instructed her, "Don't admit to anything, even if … they have it on video."

Ranger Baggett testified regarding his actions in investigating the theft and his discussions with the individuals involved, including Banks and Appellant. Specifically, counsel for the State played Banks's body camera footage and questioned Baggett as to what he observed occurring in the video. At the conclusion of direct examination, Appellant's trial counsel raised a contention that the State violated its own motion in limine by asking Baggett's opinion on whether Appellant committed theft in the video. Outside the jury's presence, defense counsel stated, "Defense makes a bill of exception the State violated the order on their own motion in limine; number 5, any mention of anyone's opinion as to the guilt or innocence of the defendant." After a brief discussion of the issue from both sides, the State said, "Your Honor, I don't think the defense is asking for a ruling, I think they just wanted to put it on the record." Defense counsel responded, "Right." The trial court then asked, "[Y]ou just wanted to put it on the record what you're arguing violated the motion in limine?" Again, defense counsel responded, "Right," then added, "We object to State violated [sic]. We make a bill of exception on -- well, we make a bill of exception stating our objection and that that order has been violated

4

and that there is no instruction from the Court that could cure." The trial court answered, "Then that's on the record." Thereafter, the court went back on the record before the jury.

At the conclusion of trial, the jury found Appellant "guilty" of the offense and assessed punishment of two years' imprisonment (probated for a term of five years), as well as a fine of $10,000.00. This appeal followed.

**ACCOMPLICE WITNESS TESTIMONY**

In his first issue, Appellant argues that Banks's accomplice-witness testimony was not sufficiently corroborated to satisfy the "accomplice witness rule" found in Article 38.14 of the Texas Code of Criminal Procedure.

## Standard of Review and Applicable Law

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2023). When evaluating the sufficiency of corroborating evidence under Article 38.14, we eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Castillo v. State*, 221 S.W.3d 689, 691–92 (Tex. Crim. App. 2007). This "tends to connect" standard does not present a high threshold as the "evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). "Rather, the [non-accomplice] evidence must simply link the accused in some way to the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

The sufficiency of non-accomplice evidence is judged according to the particular facts and circumstances of each case. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Id.* As the Texas Court of Criminal Appeals has explained,

> No precise rule can be formulated as to the amount of evidence required to corroborate. The non-accomplice evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. Nor must the non-accomplice evidence directly link the accused to the commission of the

5

> offense. While the accused's mere presence in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense. Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration.

*Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). In determining whether the non-accomplice evidence tends to connect the defendant to the commission of the offense, we view the evidence in the light most favorable to the jury's verdict. *Turner v. State*, 571 S.W.3d 283, 287–88 (Tex. App.—Austin 2019, pet. ref'd).

**Analysis**

Setting aside Banks's testimony, the non-accomplice evidence in this case comes largely from the body camera footage. The camera captured Appellant handing Banks a watch case and instructing her to "take that shit." Subsequently, the footage shows Banks placing watches and sunglasses from the Poster home into her uniform shirt while in close proximity to Appellant, with one instance occurring while Appellant stood directly in front of her. The video also shows Banks joking to Appellant about taking makeup items, and Appellant laughing in response.

While Appellant's mere presence at the Poster house during the commission of the crime cannot alone corroborate Banks's testimony, the video displays more incriminating circumstances than merely showing Appellant's presence. Specifically, the jury was aware of his close proximity to Banks as she stole the Poster family's belongings, in conjunction with his instruction to Banks to "take" items and his laughter in response to her joke about stealing the makeup. Further, Appellant was visible on camera counting the cash inside a wallet located inside the Poster residence, and Poster testified that cash was missing after the eviction. A rational juror could find that these circumstances show that Appellant was aware of and condoned Banks's actions, as well as that he participated in the theft himself. *See Casanova v. State*, 383 S.W.3d 530, 534 (Tex. Crim. App. 2012) ("[W]hen there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the fact-finder."). Under the comparatively low "tends to connect" standard, these additional "suspicious circumstances" link Appellant to the offense. We conclude that a rational jury could have found that the non-accomplice evidence tended to connect Appellant to the theft. Accordingly, we overrule Appellant's first issue.

## RECUSAL OF TRIAL JUDGE

In his second issue, Appellant contends that Judge Charles abused his discretion by denying Appellant's motions to recuse Judge Skeen.

### Standard of Review

We review the denial of a motion to recuse for abuse of discretion. *See* TEX. R. CIV. P. 18a(j)(1)(A). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or when it acts without reference to any guiding principles. *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding). An appellate court should not reverse a recusal judge whose ruling on the motion was within the zone of reasonable disagreement. *Gaal v. State*, 332 S.W.3d 448, 456 (Tex. Crim. App. 2011). In its abuse-of-discretion review, an appellate court considers the totality of the evidence and information elicited at the recusal hearing to see if the record reveals sufficient evidence to support the recusal judge's ruling. *Id.* We apply a reasonable person standard in determining whether a recusal motion based upon impartiality or bias should have been granted. *Duffey v. State*, 428 S.W.3d 319, 324 (Tex. App.—Texarkana 2014, no pet.).

The failure to recuse a judge because his impartiality might reasonably be questioned is subject to a harm analysis. *Mosley v. State*, 141 S.W.3d 816, 837 (Tex. App.—Texarkana 2004, pet. ref'd). We examine (1) the risk of injustice to the parties in the particular case, (2) the risk that denial of relief will produce injustice in other cases, and (3) the risk of undermining the public's confidence in the judicial process. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864, 108 S. Ct. 2194, 100 L.Ed.2d 855 (1988).

### Applicable Law

Rule 18a of the Texas Rules of Civil Procedure applies to the recusal of judges even in criminal cases. *Ex parte Sinegar*, 324 S.W.3d 578, 581 (Tex. Crim. App. 2010) (quoting *Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993)). A motion to recuse a judge "must assert one or more of the grounds listed in Rule 18b." TEX. R. CIV. P. 18a(a)(2). Among other things, a judge must be recused in any proceeding in which "the judge's impartiality might reasonably be questioned," or the judge "has a personal bias or prejudice concerning the subject matter or a party." TEX. R. CIV. P. 18b(b)(1), (2). A motion to recuse seeks to prevent a judge from hearing a case because of a non-constitutional reason. Even if a motion to recuse is procedurally

defective, the judge must refer the motion so another judge can determine the merits of the motion to recuse (if the judge does not voluntarily recuse himself). *Duffey*, 428 S.W.3d at 324.

A party seeking recusal must satisfy a "high threshold" before a judge must be recused. *Ex parte Ellis*, 275 S.W.3d 109, 116 (Tex. App.—Austin 2008, no pet.). Courts enjoy a "presumption of judicial impartiality." *Abdygapparova v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd). The movant's burden is only satisfied when the movant provides facts demonstrating the presence of bias or partiality of such a nature and extent as to deny the movant due process of law or a fair trial. *Drake v. Walker*, 529 S.W.3d 516, 528 (Tex. App.—Dallas 2017, no pet.). In determining whether a judge's impartiality might be reasonably questioned so as to require recusal, the proper inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial. *Duffey*, 428 S.W.3d at 325 (citing *Rogers v. Bradley*, 909 S.W.2d 872, 881 (Tex. 1995)); *Burkett v. State*, 196 S.W.3d 892, 896 (Tex. App.—Texarkana 2006, no pet.). The determination of whether recusal is warranted must be made on a case-by-case fact-intensive basis. *McCullough v. Kitzman*, 50 S.W.3d 87, 89 (Tex. App.—Waco 2001, pet. denied). Conclusory statements, conjecture, or mere assertions of bias will not satisfy the burden or overcome the presumption of impartiality. *Abdygapparova*, 243 S.W.3d at 198.

Bias sufficient to warrant recusal generally stems from an extrajudicial source and results in an outcome "on the merits" based on information *outside* of what the judge learned from participating in the case at hand. *Id.*; *Kniatt v. State*, 239 S.W.3d 910, 913 n.5 (Tex. App.—Waco 2007, no pet.). But, when recusal is based on in-court proceedings, the alleged biased rulings or remarks must display a deep-seated favoritism or antagonism that would make a fair judgment impossible. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam); *In re C.J.O.*, 325 S.W.3d 261, 267 (Tex. App.—Eastland 2010, pet. denied). Partiality, bias, and prejudice, in the context of recusal, do not refer to all favoritism or unfavorable rulings toward an individual or his case, but only to such as is wrongful or inappropriate. *Ellis*, 275 S.W.3d at 116. The need for recusal is triggered only when a judge displays an "attitude or state of mind so resistant to fair and dispassionate inquiry" as to cause a reasonable member of the public to question the objective nature of the judge's rulings. *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 558, 114 S. Ct. 1147, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring)).

**Analysis**

Appellant's first motion to recuse was based on Judge Skeen's increase of his bond to $500,000.00 following his violation of bond conditions, refusal to reduce the bond amount upon Appellant's motion, and the judge's remark at the subsequent bond reduction hearing that he would not cut Appellant any slack.[2] As aforementioned, in deciding the first motion to recuse, Judge Charles found that Judge Skeen's statement could be interpreted as a promise to give Appellant the same treatment as any other criminal defendant. Although Judge Skeen's remark toward Appellant may have been intemperate in tone, judicial remarks during a proceeding that are "critical or even hostile" to counsel, parties, or their cases do not generally support recusal. *Kniatt*, 239 S.W.3d at 923–24 (citing *Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex. App.-Houston [14th Dist.] 1997, no pet.)). Instead, expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women may display, do not establish bias or partiality. *Gaal*, 332 S.W.3d at 454. For example, the Texas Court of Criminal Appeals cited favorably to a federal court decision wherein a trial judge calling a defendant a "thoroughly corrupt police officer" did not meet the recusal threshold, particularly when the trial provided evidence on which the judge could base this comment. *Id.* at 455 n.24 (citing *United States v. Pulido*, 566 F.3d 52, 62–63 (1st Cir.2009)). We do not conclude from the record that Judge Skeen's remark was outside the bounds delineated in *Gaal*.

Appellant also argues that Judge Skeen's decision to recuse himself on a separate "election matter in Precinct One involving one of Appellant's political opponents" was further evidence of bias. On this point, counsel stated as follows: "I do not know and … [it] would not be right for me to speculate as to why. But I would speculate that the same reasons that would cause Judge Skeen to recuse himself from ruling on whether my client's opponent in election was valid would also lead him to recuse himself in this case." Given the many reasons upon which Judge Skeen could have based his prior recusal, and counsel's contemporaneous acknowledgement that this argument was no more than speculation, this factor cannot overcome the presumption of impartiality. *Abdygapparova*, 243 S.W.3d at 198; *see also In re Reger*, No. 2-07-155-CV, 2008 WL 2002751, at *1 (Tex. App.—Fort Worth May 8, 2008, no pet.) (mem.

---

[2] Appellant generally cites to "disparaging comments" by Judge Skeen but provides no other examples or record citations to any such comments.

op., not designated for publication) (trial judge's voluntary recusal in one case does not necessarily require recusal in another case that may or may not appear to be identical).

Appellant's remaining argument relates to Judge Skeen's rulings setting bond and denying his motion to reduce bond. Judicial rulings alone, including rulings related to bond amounts and reduction, "almost never constitute a valid basis for a bias or partiality motion," because appeal is the remedy for unfair judicial rulings.[3] *See Story v. State*, No. 10-20-00034-CR, 2022 WL 16839655, at *4 (Tex. App.—Waco Nov. 9, 2022, pet. ref'd) (mem. op., not designated for publication) (citing *Liteky*, 510 U.S. at 555, 114 S. Ct. at 1157); *see also Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (earlier erroneous rulings in the same proceeding do not arise from extrajudicial source and must demonstrate a "high degree of favoritism or antagonism that renders fair judgment impossible"). We cannot say that Judge Charles's implicit determination that Judge Skeen's erroneous rulings regarding bond reduction did not demonstrate favoritism or antagonism sufficient to render fair judgment impossible is outside the zone of reasonable disagreement. *See Gaal*, 332 S.W.3d at 456.

Appellant's second motion to recuse was based on Judge Skeen's decision that Appellant's case would be tried prior to the cases of several incarcerated defendants.[4] [4]Specifically, Appellant argued that this decision evidenced prejudice because a non-biased judge would try the cases of the incarcerated defendants first. The trial court is vested with broad discretion to manage and control its docket in order to promote the orderly and efficient administration of justice, while protecting the statutory and constitutional rights of all persons who come before the court. *Taylor v. State*, 255 S.W.3d 399, 402 (Tex. App.—Texarkana 2008, pet. ref'd). A trial judge's decision to proceed to trial on one case prior to another is an exercise of this discretion, and as a part of in-court proceedings, does not alone provide a valid basis for a motion to recuse based on bias or partiality. *Story*, 2022 WL 16839655 at *4; *Cumpian v. State*, 812 S.W.2d 88, 91 (Tex. App.—San Antonio 1991, no pet.) ("Appellant contends that the judge's bias is reflected by proceeding to trial in his case rather than a murder case, where that defendant was in custody. We find no bias, prejudice, or error in allowing the judge to call the

---

[3] Appellant did in fact seek appellate relief from this Court for Judge Skeen's denial of his motion to reduce bond, and received a new hearing at which his bond amount was lowered. *See Traylor-Harris*, 2022 WL 3908538, at *4-5.

[4] Notably, Appellant presented no evidence that the incarcerated defendants previously asserted their respective speedy trial rights or intended to do so.

trial docket in a manner he deems appropriate."). Again, we cannot agree that Judge Charles's denial of Appellant's motion to recuse on this ground was outside the zone of reasonable disagreement. *See Gaal*, 332 S.W.3d at 456.

Given the totality of the circumstances, Appellant did not present sufficient evidence with either motion to rebut the presumption of a neutral and detached trial court. We conclude that Judge Charles did not abuse his discretion by denying both of Appellant's motions to recuse. We overrule Appellant's second issue.

## MISTRIAL

In his third issue, Appellant argues that the trial court erred in failing to declare a mistrial following the State's alleged violation of its motion in limine while questioning Ranger Baggett. The State argues that Appellant has not preserved this point of error for our review.

### Standard of Review and Applicable Law

A trial court's denial of a mistrial is reviewed for abuse of discretion, and the trial court's ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the trial court's ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Mistrial is the appropriate remedy when error is so prejudicial that expenditure of further time and expense would be futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). It is a remedy intended for extreme circumstances when prejudice is incurable and less drastic alternatives have been explored. *Ocon*, 284 S.W.3d at 884.

### Analysis

To preserve a complaint for appellate review, a party must have made a timely, specific objection, request, or motion to the trial court that stated the specific grounds for the ruling sought by the complaining party, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a). Further, the trial court must have either ruled or refused to rule on the request (in which case the complaining party must have objected to the trial court's refusal to rule). *Id.*; *Ex parte Covarrubias*, 665 S.W.3d 605, 612 (Tex. Crim. App. 2023) ("It is axiomatic that an adverse ruling is necessary to preserve error.").

It is unlikely that defense counsel's request for a "bill of exception" meets the requirement of a timely and specific motion for mistrial. Although counsel used some language

relevant to moving for a mistrial, namely that no instruction from the trial court could cure the prejudice, he did not mention or explicitly move for this relief. Moreover, counsel did not allege that any specific question or questions violated the motion in limine, and since defense counsel did not object to any particular question (but waited to raise the motion in limine issue until the State completed its direct examination of Ranger Baggett), we cannot determine the basis for such a motion from context. *See, e.g.*, **Sandow v. State**, 787 S.W.2d 588, 595 (Tex. App.—Austin 1990, pet. ref'd) (error in examination of witnesses not preserved absent objection at trial identifying what is objected to and specific grounds for ruling). Therefore, any such objection, request, or motion would have lacked specificity. TEX. R. APP. P. 33.1(a). Similarly, because "[a] motion for mistrial is timely only if it is made as soon as the grounds for it become apparent," defense counsel's delay in raising the issue likely rendered any objection or subsequent motion for mistrial untimely. *See* **London v. State**, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016).

However, even presuming that Appellant adequately moved for a mistrial, we cannot conclude that Appellant preserved this complaint for our review. Not only does the record lack any semblance of an explicit or implicit adverse ruling on the issue, but there is no support for the contention that the trial court refused to rule on same. *See* **Covarrubias**, 665 S.W.3d at 612. Rather, the record indicates that defense counsel twice verbally affirmed that he was *not* seeking any ruling from the trial court, but only wanted to "put it on the record," to which the trial court agreed. In the absence of an adverse ruling or refusal to rule, Appellant has not preserved error related to the motion in limine or the alleged motion for mistrial. *See* TEX. R. APP. P. 33.1(a). We overrule Appellant's third issue.

### DISPOSITION

Having overruled each of Appellant's three issues, we *affirm* the judgment of the trial court.

GREG NEELEY
Justice

Opinion delivered December 6, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 6, 2023**

**NO. 12-22-00321-CR**

**CURTIS TRAYLOR-HARRIS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0335-22)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*